**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ARTRA 524 (g) ASBESTOS TRUST,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 11 C 8028** |
| **ARTRA GROUP, INCORPORATED, ENTRADE, INC., ARCADIA SECURITIES LLC, PETER R. HARVEY, and JOHN P. CONROY,** | **Hon. Harry D. Leinenweber** |
| **Defendants.** | |

### MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

In 2002, Artra Group, Inc. ("Artra"), filed a voluntary Chapter 11 petition in the United States Bankruptcy Court. The Petition was precipitated by a multitude of asbestos related personal injury claims that greatly exceeded Artra's insurance coverage and assets. At the time of the bankruptcy, Artra's sole director, officer and employee was John P. Conroy and Artra's sole business was the defense of the asbestos law suits. In the bankruptcy schedules, Artra listed 1,476,000 shares of stock in a company named Comforce Corporation ("Comforce"). In 2007 the Bankruptcy Court entered an Order confirming a reorganization plan which order was affirmed by the District Court. The plan became effective as of April 2, 2007.

Among its provisions the plan established, for purposes of resolving personal injury claims, a trust into which certain of Artra's assets, including the Comforce stock were transferred. The Artra 524 (g) Asbestos Trust (the "Trust") was established as a "qualified settlement fund" under the Internal Revenue Code. Pursuant to the plan, Artra was permitted to retain bare legal title to the Comforce stock for a two-year period so that Artra could obtain any tax benefits which might be available in connection with the sale of the stock. After the two-year period expired, the stock would become the sole property of the Trust. Until then the Trust was the beneficial owner of the stock. Under the terms of the reorganization plan, Artra was required to establish an escrow account to hold the Comforce stock for sale for the benefit of the Trust. However, Artra did not execute the Escrow Agreement and retained physical possession of the share certificates which bore its name rather than the Trust's.

The players in this case are the Plaintiff Trust (hereinafter, "Plaintiff" or "Trust"), and Defendants Artra Group, Incorporated ("Artra"); Entrade, Inc. ("Entrade"), Artra's Parent Company; John P. Conroy ("Conroy"), Artra's President, sole Director and employee; Peter R. Harvey ("Harvey"), Entrade's President; and Arcadia Securities LLC ("Arcadia") (collectively, the "Defendants"). According to the Complaint, on or around November 24, 2009, Conroy, on behalf of Artra, opened a trading

account (the "Account") in Artra's name at Arcadia by executing a New Account Form. The Arcadia account executive who was in charge of the Account was Gary Herman ("Herman"). Under the terms of the Account document, Conroy was the person authorized to direct activity in the Account. In addition to the form, Artra provided Arcadia with a Corporate Resolution Certification, dated November 24, 2009, which authorized only Conroy to give orders in the Account. On December 10, 2009, Conroy sent a letter to an order clerk at Arcadia, Kurt Ruehman ("Ruehman"), enclosing stock certificates representing 690,000 shares of Comforce stock to be transferred into the Artra Account. The letter expressly (and incorrectly) advised Arcadia that the Comforce stock was owned "jointly" by Artra and the Trust.

On December 23, 2009, at Herman's direction, Ruehman executed a trade of 143,000 shares of the Comforce Stock for the price of $1.1002 per share. (It is disputed who or whether anyone on behalf of Artra authorized the sale.) Approximately one year later, on December 28, 2010, Comforce Corporation completed a merger in which its outstanding stock was valued at $2.50 per share. The Trust received $156,325.62 for its 143,000 shares in the December 2009 sale instead of $358,500.00 which it would have received had the shares not been sold until the merger. The Trust has demanded the difference, $202,174.00, from Arcadia, based on its contention that both Artra and its agent,

Arcadia, converted the shares.  The Trust has moved for summary judgment against Arcadia.

The Trust has supported its Motion with affidavits from the Trustee, Alfred Wolin ("Wolin"), and the Defendant, Peter Harvey, as well as the deposition testimony of Herman and Ruehman. Arcadia has supplied the affidavit of Herman.  Wolin, in addition to describing the trust plan, stated that he first learned of the transfer of Comforce stock to Arcadia after he received notice of the Comforce merger.  He further averred that at no time did he, on behalf of the Trust, authorize the transfer and sale of the Comforce stock.  Harvey stated in his affidavit that he was President of Entrade, the sole shareholder of Artra, and that he was not an officer, director, or employee of Artra.  He further stated that around November 2009, he received an unsolicited telephone call from Herman whose apparent purpose was to discuss Comforce stock.  Herman, according to Harvey, told him he was part of a vocal group of investors in Comforce who were frustrated with Comforce management.  Harvey stated that he advised Herman that the Trust, not Artra, owned the shares. Herman suggested that Artra open a trading account with Arcadia and transfer the stock to the Account.  Harvey denied that he told Herman or anyone else at Arcadia that he had authority to direct Arcadia to sell the Comforce stock and did not direct Conroy, Herman or anyone else at Arcadia to sell any of the

Comforce stock. He further stated that he was told by an Arcadia employee in December 2009 that a certain number of shares of Comforce had been sold. This was the first he knew about it.

Arcadia has countered these affidavits with the affidavit of Gary Herman, dated February 18, 2014. He acknowledged that he was the registered representative who handled the Artra account. He attached to his affidavit the New Account Form which was executed by Conroy, the Corporate Resolution certified by the Artra Corporate Secretary, a Request for Taxpayer Identification Number also signed by Conroy, and the letter from Conroy acknowledging the transmittal of 690,000 Comforce shares to the Artra Account. In addition, he included two other documents, unsigned by Conway or anyone else purporting to act on behalf of Artra: (1) an "Introducing Account Agreement" and (2) a "New Account Checklist," that purported to authorize Harvey as well as Conroy to trade in the Account. In his affidavit Herman states that the Introducing Account Agreement stated that only the "Client" had an interest in its account. He further stated that Peter Harvey authorized the sale of the Comforce stock at $1.10 a share and that no one at Acadia "knew or had reason to believe" that the Trust claimed any interest in the shares.

Unfortunately for Arcadia (and Herman), Herman gave a deposition in the case, on November 4, 2013, as Arcadia's Rule 30(b)(6) witness. In his deposition Herman could remember

virtually nothing about the trade involved in this case
specifically or even Arcadia's procedures for making trades in
general.  His deposition was so unsatisfactory that the Trust has
filed a motion seeking discovery sanctions against Arcadia.
While in his affidavit he came up with an alleged document that
purports to show that both Harvey and Conroy had the power to
authorize trades in the Artra account, at his deposition he
testified that he did not know who would have such power and
neither produced nor mentioned any such document.  He thought
that Conroy, who executed the New Account Application probably
had authority but did not know if anyone else did or even whether
there had been any changes made in the Account documents since
their execution.  He did not recall the Account document,
specifically authorizing only Conroy.  He could not recall
whether Artra provided Arcadia with a list of officers,
directors, or employees, or whether he knew who the officers,
directors or employees of Artra were.  Nor could he recall if
Harvey, who he did know, was an officer, director or employee of
Artra.  He could not state the basis for the Arcadia answer to an
interrogatory in which it stated that Harvey was both an officer
and director of Artra.  When asked about Arcadia's denials to the
request to admit, he could state no factual support for denials
as to whether Harvey had been identified on the corporate
resolution certificate; whether Harvey was an officer, director,

or employee of Artra; whether Conroy was the sole officer, director, and employee of Artra; whether it had received prior notice that the Trust had a "joint" interest in the Comforce stock; and whether it had conducted any investigation or inquiry as to the identity of the Trust. Based on Herman's deposition, therefore, the Court will not credit any of the statements in his affidavit, since they were not supported by his deposition testimony. An affiant may not discredit his earlier deposition testimony without explanation. *United States v. Funds,* 403 F.3d 448, 465 (7th Cir. 2005). Nor will the Court grant any evidentiary value to the "New Account Checklist" which purports to show that Harvey was an authorized signor/trader, which is a document that Herman disavowed knowing anything about in his deposition.

## II. DISCUSSION

According to the Trust's Complaint, Artra and its agent, Arcadia, converted the Comforce shares when it sold them without the Trust's authorization. "The essence of an action for conversion is the wrongful deprivation of property from the person entitled to possession." *In re Thebus,* 108 Ill.2d 255, 260 (1985). To establish a claim for conversion, a plaintiff must establish that (1) it has a right to the property; (2) that it has an absolute and immediate right to possession of the property; (3) that it has made a demand (unless a demand would be

futile); and (4) that the defendant wrongfully and without authorization assumed control over the property. *Cirrincione v. Johnson,* 184 Ill.2d 109, 114 (1998). Arcadia claims that the Trust has made statements in pleadings that deny the fact that it had a legal right to possession of the property. However, the Bankruptcy Order and Trust Agreement shows to the contrary. It is clear that the assets of Artra and specifically the Comforce stock, were the property of the Trust to be held on behalf of asbestos personal injury claimants, and not the property of Artra.

Arcadia also contends that the Trust admitted that Harvey had authority to direct the sale of the stock. However this is not what either the Complaint or the Rule 56.1 Statements say. What these documents say is that Harvey, Entrade, and Artra, wrongfully failed to execute the Escrow Agreement and deliver the stock into the escrow. Neither of the documents say that Harvey, Entrade, or Artra had the authority to transfer the stock into an account with a third party without the permission of the Trust. It is clear from the record in the case that the shares of Comforce were assets of the Trust and none of the Defendants in the case had the right to possession of them or the right to dispose of them.

Arcadia also contends that is entitled to protection of Article 8 of the Uniform Commercial Code. 810 ILCS5/8-115. This

section provides that a securities broker who has dealt with a financial asset at the direction of the customer or principal, is not liable to a person having an adverse claim to the financial asset unless the broker acted with notice of the adverse claim. Here the only authorized person to give direction was Conroy who did not give any direction to Arcadia and the Letter of Transmittal which Arcadia acknowledged receiving from Conroy clearly put it on notice that the Trust had an interest in the financial asset (although incorrectly calling it "joint.") Denial of knowledge of the fact that assets consisted of converted shares does not relieve a person of liability if there is no statutory immunity. Thus, since Arcadia did not qualify for immunity under Article 8, it cannot escape liability because it was not fully aware of the illegal activities of its principal. As pointed out by the Illinois courts, "the essence of conversion is not acquisition by the wrongdoer but a wrongful deprivation of the owner thereof." *Jensen v. Chicago & W. Ind. R.R.,* 94 Ill.App.3d 915, 932 (1st Dist. 2009). Conversion has been described as more accurately resembling a strict liability tort and does not require the defendant to use the property to his own advantage. *1-8 ILLINOIS TORT LAW 48.01[2].*

The remaining element, the demand for possession to support a claim for conversion need little discussion. A demand is unnecessary if it would be futile. Here the shares had been sold

by Arcadia so they could not be returned. *Jensen v. Chicago and Western Indiana R. Co.,* 94 Ill.App.3d 915, 933 (1st Dist. 1981).

Arcadia lastly argues that since the sale of the Comforce stock was at market and the Trust received the whole sale price, less a reasonable commission, it has suffered no damages. However, the Seventh Circuit in *Telemark Development Group, Inc. v. Mengelt,* 313 F.3d 972, 983 (2002), stated that under Illinois law, where the stock appreciated after conversion, the plaintiff may recover the highest value of the stock within a reasonable time after conversion, even up to the time of the judgment (citing *Mercantile Holdings, Inc. v. Keeshin,* 261 Ill.App.3d 546 (1st Dist. 1983). Here the Trust did not find out about the conversion until after the Comforce merger had been announced. Hence it is reasonable to place the damages at what the Trust would have obtained had the conversion not taken place since by its inactions toward the Comforce stock it clearly demonstrated it had no intention to sell the stock.

### III. CONCLUSION

For the reasons stated herein, the Motion for Summary Judgement is granted. Judgment is entered in favor of the Trust in the amount of $202,264.00. The Trust asks for prejudgment interest in its Reply Brief, but insofar as Arcadia has not had an opportunity to argue the point the Court will not grant it at this time. Insofar as the Trust has benefited from the failure

of Arcadia to have a proper 30(b)(6) witness, the Court does not believe that any additional penalty is warranted.  The Motions for Discovery Sanctions are therefore denied.

**IT IS SO ORDERED**.

_____
Harry D. Leinenweber, Judge
United States District Court

Date: April 22, 2014